UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**24-20436-CR-ALTONAGA/REID**

Case No. _____

18 U.S.C. § 371
18 U.S.C. § 982

FILED BY ___MP___ D.C.

Sep 30, 2024

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - Miami

UNITED STATES OF AMERICA,

vs.

HECTOR SAMUEL ESQUIJEROSA,

Defendant.
_____/

## INFORMATION

The United States Attorney charges that:

### GENERAL ALLEGATIONS

At all times material to this Information:

### Importing Goods into the United States

1. The U.S. Customs and Border Protection ("CBP"), an agency of the U.S. Department of Homeland Security, was responsible for examining goods entering the United States to ensure they were admissible under, and in compliance with, federal laws and regulations. CBP was also responsible for assessing and collecting import duties, taxes, and fees on those goods.

2. In order to facilitate the entry of goods into the United States, a customs broker, acting as an authorized representative of the importer, filed entry documents with CBP.

3. CBP Entry Forms 7501 ("Entry Summary") and 3461 ("Entry/Immediate Delivery") required an importer to provide specific and truthful information pertaining to imported goods, including a description of the goods, as well as their manufacturer, value, and country of origin.

4. The information entered on CBP Entry Forms 7501 and 3461 enabled CBP to properly assess import duties, collect accurate statistics, and determine whether other applicable legal requirements were met. For example, from the declared value of the goods, CBP determined how much duty to collect; and from the declared country of origin of the goods, CBP determined whether the goods were exempt under free-trade agreements or were subject to special import duties.

### U.S. Trade Laws Regarding Importation of Goods into the United States

5. Pursuant to Title VII of the Tariff Act of 1930, as amended, the U.S. Department of Commerce ("Commerce") and the U.S. International Trade Commission had the authority to impose duties on certain foreign imports, such as anti-dumping duties and countervailing duties, in order to mitigate the adverse impact of various trade practices on domestic industries and workers.

6. Commerce had authority to impose anti-dumping duties to provide relief to domestic industries that have been, or were threatened with, material injury caused by imported goods sold in the United States market at prices that were shown to be less than fair market value (i.e., dumping).

7. Commerce also had authority to impose countervailing duties to give a similar kind of relief to domestic industries that have been, or were threatened with, material injury caused by imported goods that received significant foreign government subsidies and could therefore be sold at lower prices than similar goods produced in the United States.

8. Section 301 of the Trade Act of 1974 ("Section 301"), as amended, authorized the Office of the U.S. Trade Representative to impose import duties in response to unfair trade practices by foreign countries. Such unfair trade practices included violations of U.S. trade

agreements, as well as unreasonable or discriminatory practices that burdened or restricted U.S. commerce.

9.  In 1994, the United States, Mexico, and Canada entered into the North American Free Trade Agreement ("NAFTA"), which allowed the importation of many goods from and between these countries duty-free. In 2020, NAFTA was replaced by a similar agreement between these countries called the United States – Mexico – Canada Agreement ("USMCA").

### Duties Imposed on Truck Tires from China

10.  Tractor-trailer truck tires (hereinafter referred to as "truck tires"), regardless of the country of origin, carried a general duty rate of 4% of their total declared value. Under the terms of NAFTA and the USMCA, most Canadian products, including truck tires, received duty-free access to U.S. markets.

11.  On or about September 24, 2018, truck tires originating in or imported from China, became subject to a Section 301 duty rate of 10%. Beginning on or about May 10, 2019, and continuing through the date of this Information, that rate increased to 25%.

12.  From on or about February 15, 2019, through the date of this Information, Commerce-issued anti-dumping and countervailing duty orders were in effect in the United States that imposed a combined duty rate of 44.99% on all truck tires originating in or imported from China.

13.  As a result, starting on or about May 10, 2019, through the date of this Information, the combined duties on truck tires originating in or imported from China, were 73.99%.

### The Defendant and Related Entities

14.  Production Tire Company ("Production Tire") was a Florida corporation located at 3565 NW 74th Avenue, Miami, Florida, doing business as a retailer of truck tires.

15. Premier Trade Corporation ("Premier Trade") was a Florida corporation with a principal address of 3565 NW 74th Avenue, Miami, Florida.

16. Defendant **HECTOR SAMUEL ESQUIJEROSA**, a resident of Miami-Dade County, Florida, was the registered agent, president and sole corporate officer of Production Tire and Premier Trade.

17. Company 1 was a Canadian corporation with a principal address located in Quebec, Canada.

18. Individual 1, a resident of Quebec, Canada, was an operator of Company 1.

19. Company 2 was a corporation registered in Malaysia that was a purported shipper of goods, including truck tires.

20. Individual 2 was a resident of the United Kingdom.

21. Company 3 was a Massachusetts corporation with a principal address in Mansfield, Massachusetts.

### CONSPIRACY TO COMMIT AN OFFENSE AGAINST THE UNITED STATES
### (18 U.S.C. § 371)

22. Beginning in or around September 2018, and continuing through in or around January 2023, the exact dates being unknown to the United States Attorney, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant,

**HECTOR SAMUEL ESQUIJEROSA,**

did willfully, that is, with the intent to further the object of the conspiracy, and knowingly, combine, conspire, confederate, and agree with others known and unknown to the United States Attorney, to commit an offense against the United States, that is, to knowingly and willfully, and with intent to defraud the United States, smuggle, and clandestinely introduce, into the United States any merchandise, that is, truck tires, which should have been invoiced, and make out and pass, through

4

the customhouse, a false and fraudulent invoice, and other document and paper, including CBP entry forms and invoices, in violation of Title 18, United States Code, Section 545.

## PURPOSE OF THE CONSPIRACY

23. It was the purpose of the conspiracy for **HECTOR SAMUEL ESQUIJEROSA** and his co-conspirators to unlawfully enrich themselves by importing truck tires manufactured in China without paying the required duties on such imports to the United States and then selling the illegally imported truck tires for financial gain.

## MANNER AND MEANS OF THE CONSPIRACY

The manner and means by which **HECTOR SAMUEL ESQUIJEROSA** and his co-conspirators sought to accomplish the object and purpose of the conspiracy included, among other things, the following:

24. **HECTOR SAMUEL ESQUIJEROSA,** together with his co-conspirators, ordered truck tires from suppliers, wholesalers, and manufacturers in China that were later loaded into shipping containers in China, illegally imported into the United States, and then sold to buyers in the Southern District of Florida and elsewhere.

25. In order to avoid the assessment of applicable duties imposed on truck tires from China, **HECTOR SAMUEL ESQUIJEROSA,** together with his co-conspirators, caused truck tires from China to be transshipped through third countries, primarily Canada and Malaysia, before coming to the United States.

26. For some of the shipments, **HECTOR SAMUEL ESQUIJEROSA,** together with his co-conspirators, caused original markings on the sidewalls of the truck tires to be removed and replaced with other markings, in order to conceal from CBP that the truck tires originated in China.

27. **HECTOR SAMUEL ESQUIJEROSA,** together with his co-conspirators, caused the creation of two sets of invoices—one set of invoices that reflected the actual value of the truck tires and the price paid for the truck tires, and a second set of invoices that fraudulently undervalued the truck tires.

28. **HECTOR SAMUEL ESQUIJEROSA,** together with his co-conspirators, caused the creation of false invoices that reflected the Chinese-origin truck tires as truck tires that were manufactured in third countries, primarily Canada and Malaysia.

29. **HECTOR SAMUEL ESQUIJEROSA,** together with his co-conspirators, filed and caused the filing of false and fraudulent entry documents and invoices with CBP, that falsely represented the value of the truck tires, and that falsely represented the Chinese truck tires as having originated in Canada or Malaysia instead of China.

30. **HECTOR SAMUEL ESQUIJEROSA** and his co-conspirators shared documents containing false information, and used encrypted instant messaging apps, such as WhatsApp and WeChat, to discuss, plan, coordinate, and conduct acts in furtherance of the conspiracy.

31. **HECTOR SAMUEL ESQUIJEROSA** and his co-conspirators fraudulently evaded the payment of duties to CBP on truck tires that were imported from China, resulting in a loss of revenue to the United States in excess of $1.9 million.

**OVERT ACTS**

In furtherance of the conspiracy and to achieve the object and purpose thereof, **HECTOR SAMUEL ESQUIJEROSA,** and his co-conspirators committed and caused to be committed, in the Southern District of Florida and elsewhere, at least one of the following overt acts, among others:

*December 2018 Import*

1. On or about September 28, 2018, **HECTOR SAMUEL ESQUIJEROSA** emailed a supplier of truck tires in China reminding the supplier to provide him a new invoice for customs, as agreed, that reflected a lower value for the truck tires than the price that **ESQUIJEROSA** actually agreed to pay the supplier for the truck tires.

2. On or about October 12, 2018, the supplier emailed **HECTOR SAMUEL ESQUIJEROSA** two invoices, one reflecting the actual price of 502 truck tires, and another one reflecting a lower price for 502 truck tires, with the attached invoices referred to as "REAL" and "LOW" invoices.

3. On or about December 18, 2018, **HECTOR SAMUEL ESQUIJEROSA** caused Production Tire's customs broker to file an Entry Summary with the false invoice **ESQUIJEROSA** received from the Chinese supplier dated October 12, 2018, and to falsely declare to CBP on Entry Form No. EJE-18457091 that the total value of 502 truck tires it was importing from China was $48,174.00.

*July 2019 Import*

4. On or about April 29, 2019, **HECTOR SAMUEL ESQUIJEROSA** emailed to Individual 1 the bank account and wiring instructions to send a payment to Ping An Bank in China for **ESQUIJEROSA's** purchase of truck tires from a Chinese supplier.

5. On or about June 28, 2019, Individual 1 sent **HECTOR SAMUEL ESQUIJEROSA** an email with a false invoice in the amount of $15,000 for 260 truck tires purportedly sold by Company 1 to Production Tire.

6. On or about July 1, 2019, **HECTOR SAMUEL ESQUIJEROSA** caused Production Tire's customs broker to submit an Entry Summary with the false invoice from

Company 1 dated June 28, 2019, and to declare to CBP that the country-of-origin designation for the 260 truck tires listed on Entry No. 9LR-10489546 was Canada, and that their total value was $15,000.

*December 2019 Import*

7. On or about December 13, 2019, **HECTOR SAMUEL ESQUIJEROSA** emailed Individual 1 a false invoice purportedly from Company 1 to be used for the U.S.-Canada border crossing, claiming that Production Tire had acquired 253 truck tires from Company 1 for the price of $12,011.

8. On or about December 14, 2019, **HECTOR SAMUEL ESQUIJEROSA** caused Production Tire's customs broker to file an Entry Summary with the same false invoice dated December 13, 2019, purportedly from Company 1, and to declare to CBP that the country-of-origin designation for the 253 truck tires listed on Entry No. 9LR-10586226 was Canada, and that their total value was $12,011.

9. On or about February 14, 2020, **HECTOR SAMUEL ESQUIJEROSA** sent messages to a Chinese truck tire supplier over WeChat, and attached a record for the truck tire shipment involving Entry No. 9LR-10586226. **ESQUIJEROSA** explained to the Chinese supplier that duties in the United States were very high, but that for the past year, he had been placing orders for truck tires using a Canadian company that received the truck tires from China and transshipped them through Canada to Miami, Florida.

*August 2021 Import*

10. On or about February 4, 2021, **HECTOR SAMUEL ESQUIJEROSA** formed Premier Trade as a Florida corporation.

11.     On or about April 20, 2021, **HECTOR SAMUEL ESQUIJEROSA** authorized Individual 2 to ship to him, **ESQUIJEROSA**, two containers of Chinese truck tires after **ESQUIJEROSA** received photographs via WhatsApp from Individual 2 showing the Chinese truck tires rebranded as "ARMFORCE" tires with the United States Department of Transportation tire identification number corresponding to a Malaysian factory, instead of the Chinese factory where the truck tires had been manufactured.

12.     On or about July 18, 2021, **HECTOR SAMUEL ESQUIJEROSA** sent a series of WhatsApp messages to Individual 2, and discussed a false invoice from Company 2 that billed Premier Trade for 547 truck tires purportedly from Malaysia to be imported through Savannah, Georgia. During the exchange, **ESQUIJEROSA** commented on the fake pricing by stating, "I don't need any red flags. Make it look nice and let's not get greedy."

13.     On or about August 16, 2021, **HECTOR SAMUEL ESQUIJEROSA** and his co-conspirators caused Premier Trade's customs broker to file an Entry/Immediate Delivery form with a false invoice from Company 2, and to falsely declare to CBP that the country-of-origin designation for the 547 truck tires listed on Entry No. CEY-10218442 was Malaysia and that their total value was $69,940.

14.     On or about November 2, 2021, **HECTOR SAMUEL ESQUIJEROSA** sent WhatsApp messages to Individual 2 and requested that Individual 2 provide a falsified letter from the purported Malaysian manufacturer of the 547 truck tires that CBP had seized at the Port of Savannah. Individual 2 explained that he "will get the letter made up and make it from a fake account."

*November 2022 Import*

15. On or about November 29, 2022, **HECTOR SAMUEL ESQUIJEROSA** and his co-conspirators used Company 3 to import 605 Chinese-origin truck tires into the Port of Miami and caused Company 3's customs broker to file an Entry/Immediate Delivery form and false invoice, falsely declaring to CBP that the country-of-origin designation for the 605 truck tires listed on Entry No. NF7-22224641 was Malaysia.

All in violation of Title 18, United States Code, Section 371.

## FORFEITURE ALLEGATIONS

1. The allegations contained in this Information are hereby re-alleged and incorporated by reference as though fully set forth herein for the purpose of alleging forfeiture to the United States of certain property in which the defendant, **HECTOR SAMUEL ESQUIJEROSA,** has an interest.

2. Upon conviction of a violation of Title 18, United States Code, Section 371, as alleged in this Information, the defendant so convicted shall forfeit to the United States any property, constituting, or derived from, proceeds the defendant obtained directly or indirectly, as a result of such violation, pursuant to Title 18, United States Code, Section 982(a)(2)(B).

3. The property subject to forfeiture as a result of the alleged offense includes, but is not limited to, the following:

   a) A sum of approximately $1,907,672.90, which represents the total amount of funds involved in or derived from the alleged offense and may be sought as a forfeiture money judgment;

   b) 546 truck tires imported by Production Tire Company on or about June 18, 2021, under Entry No. 9YL-00441742; and

   c) 542 truck tires imported by Premier Trade Corporation on or about August 16, 2021, under Entry No. CEY-10218442.

4. If the property subject to forfeiture, as a result of any act or omission of the defendant,

    a) cannot be located upon the exercise of due diligence;

    b) has been transferred or sold to, or deposited with, a third party;

    c) has been placed beyond the jurisdiction of the court;

    d) has been substantially diminished in value; or

    e) has been commingled with other property which cannot be divided without difficulty,

the United States shall be entitled to forfeiture of substitute property under the provisions of Title 21, United States Code, Section 853(p).

All pursuant to Title 18, United States Code, Section 982(a)(2)(B) and the procedures set forth in Title 21, United States Code, Section 853, as incorporated by Title 18, United States Code, Section 982(b)(1).

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

AIMEE C. JIMENEZ
ASSISTANT U.S. ATTORNEY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

v.

HECTOR SAMUEL ESQUIJEROSA,

_____/
Defendant.

CASE NO.: **24-20436-CR-ALTONAGA/REID**

**CERTIFICATE OF TRIAL ATTORNEY**

**Superseding Case Information:**
New Defendant(s) (Yes or No) ____
Number of New Defendants ____
Total number of new counts ____

**Court Division** (select one)
- [x] Miami
- [ ] Key West
- [ ] FTP
- [ ] FTL
- [ ] WPB

I do hereby certify that:

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.
2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. §3161.
3. Interpreter: (Yes or No) Yes
   List language and/or dialect: Spanish
4. This case will take __0__ days for the parties to try.
5. Please check appropriate category and type of offense listed below:
   (Check only one)
   - I  [x] 0 to 5 days
   - II [ ] 6 to 10 days
   - III [ ] 11 to 20 days
   - IV [ ] 21 to 60 days
   - V  [ ] 61 days and over

   (Check only one)
   - [ ] Petty
   - [ ] Minor
   - [ ] Misdemeanor
   - [x] Felony

6. Has this case been previously filed in this District Court? (Yes or No) No
   If yes, Judge _____ Case No. _____
7. Has a complaint been filed in this matter? (Yes or No) No
   If yes, Magistrate Case No. _____
8. Does this case relate to a previously filed matter in this District Court? (Yes or No) No
   If yes, Judge _____ Case No. _____
9. Defendant(s) in federal custody as of _____
10. Defendant(s) in state custody as of _____
11. Rule 20 from the _____ District of _____
12. Is this a potential death penalty case? (Yes or No) No
13. Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard? (Yes or No) No
14. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to October 3, 2019 (Mag. Judge Jared Strauss? (Yes or No) No
15. Did this matter involve the participation of or consultation with Magistrate Judge Eduardo I. Sanchez during his tenure at the U.S. Attorney's Office, which concluded on January 22, 2023? No
16. Did this matter involve the participation of or consultation with now Magistrate Judge Marta Fulgueira Elfenbein during her tenure at the U.S. Attorney's Office, which concluded on March 5, 2024? No

By: _____
Aimee C. Jimenez
Assistant United States Attorney
Court ID No.   A5500 0795

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name**:  HECTOR SAMUEL ESQUIJEROSA

**Case No**: _____

Count #: 1

Conspiracy to Commit Offenses Against the United States

Title 18, United States Code, Section 371

* **Max. Term of Imprisonment:** 5 years
* **Mandatory Min. Term of Imprisonment (if applicable):** N/A
* **Max. Supervised Release:** 3 years
* **Max. Fine:** $250,000

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

AO 455 (Rev. 01/09) Waiver of an Indictment

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| United States of America | ) | |
| v. | ) | Case No. |
| HECTOR SAMUEL ESQUIJEROSA, | ) | 24-20436-CR-ALTONAGA/REID |
| *Defendant* | ) | |

## WAIVER OF AN INDICTMENT

I understand that I have been accused of one or more offenses punishable by imprisonment for more than one year. I was advised in open court of my rights and the nature of the proposed charges against me.

After receiving this advice, I waive my right to prosecution by indictment and consent to prosecution by information.

Date: 9/24/2024

_____
*Defendant's signature*

_____
*Signature of defendant's attorney*

Robert J. Becerra
*Printed name of defendant's attorney*

_____
*Judge's signature*

_____
*Judge's printed name and title*